**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 07-00007-01/02/03/06/07-CR-W-FJG |
| ) | |
| RAYMOND W. ZWEGO, JR., et al, ) | |
| ) | |
| Defendants. ) | |

**ORDER**

The defendants in this action have filed motions or responses in order to exclude uncharged real estate transactions noticed in the Government's Relevant Conduct 404(b) Notification (Doc. Nos. 90, 114). Currently pending before the Court is Defendant Kinman's Notice of Opposition to the Government's Relevant Conduct (Doc. No. 138); Defendant Peterson's Motion Response to Government's Intent to Offer Evidence of Related Conduct (Doc. No. 143); and Defendants Cardarella and Shields' Motion in Limine to Exclude Evidence of "Blown" Closing on 4917 State Line Road (Doc. No. 147); and Defendant Zwego's opposition to Government's 404(b) notice (Doc. No. 254). The 404(b) incidents the Government intends to present at trial are listed in the attachment to the Government's Supplemental Notice of Related Conduct. (See Attachment 1, Doc. No. 114). The Government seeks to admit evidence of uncharged real estate transactions to show that defendants Zwego, Peterson, and Kinman schemed to defraud other lenders besides Fieldstone Mortgage in the 5034 Sunset Drive transaction. Each motion will be considered below.

## II. STANDARD

Under Fed. R. Evid. 404(b), "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, "evidence of other crimes is admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 404(b), See also United States v. Forcelle, 86 F.3d 838, 841 (8th Cir. 1996). Rule 404(b) is a "rule of inclusion." United States v. Edelmann, 458 F.3d 791, 809 (8th Cir. 2006)(quoting United States v. McCarthy, 97 F.3d 1562, 1572 (8th Cir. 1996)). "When admitted for the purposes of showing intent, the prior acts need not be duplicates, but must be sufficiently similar to support an inference of criminal intent." Id. at 809 (quoting United States v. Burkett, 821 F.2d 1306, 1309 (8th Cir. 1987)). A district court may issue a limiting instruction to the jury to advise it of the purposes for which it may consider such evidence. Id.

The Eighth Circuit adopted a four-part test to determine whether evidence of other bad acts is admissible under Rule 404(b). To be admissible, the evidence must be (1) relevant to the material issue; (2) proved by a preponderance of the evidence; (3) higher in probative value than in prejudicial effect; and (4) similar in kind and close in time to the crime charged. United States v. Warfield; 97 F.3d 1014, 1026 (8th Cir. 1996). In Edelmann, the Court noted that "there is no absolute rule regarding the number of years that can separate offenses. Rather, we apply a reasonableness standard and examine the facts and circumstances of each case." 458 F.3d at 810. "Ultimately, the question is whether the evidence is admissible to prove any relevant issue other than the character of the

defendant or his propensity toward criminal activity." Id. (citing United States v. Wint, 974 F.2d 961, 967 (8th Cir. 1992).

## II. DISCUSSION

### A. Defendant Kinman's Notice of Opposition to the Government's Relevant Conduct (Doc. No. 138)

The Government seeks to admit the following 404(b) evidence against defendant Kinman:

1. The Government seeks to admit a real estate transaction involving straw buyer Eric Meo against defendant Kinman. The Government alleges Kinman submitted loan applications for Zwego straw buyer Eric Meo on October 27, 2005 and again on December 29, 2005. The Government states Meo will testify that he never provided any of his financial information to defendant Kinman, and that his signature was forged on at least one of the loan applications.

2. The Government seeks to admit Real Estate Transaction involving straw buyer Gary McCullough against defendant Kinman. The Government alleges Kinman submitted a loan application for Zwego straw buyer McCullough on November 18, 2005. The Government states McCullough will testify that he never provided any of his financial information to defendant Kinman.

3. Government seeks to admit Real Estate Transaction involving straw buyer Penny Hinton against defendant Kinman. The Government alleges Kinman submitted two separate loan applications for Zwego straw buyer Penny Hinton on June 21, 2006, and a third on August 15, 2006. The Government states Penny Hinton will testify that she never provided any of her financial information to Kinman, she has never met him, the income information Kinman put in the loan application was falsely and fraudulently inflated, falsely stated that she would occupy the property as her primary residence, and that her signature on the loan applications were forged.

Although the Government listed other uncharged transactions in its notice, the above-identified uncharged transactions were the only ones that Kinman objected to in its response. Kinman argues the documents on these loans constitute hundreds, if not thousands of pages of discovery. Kinman notes materials would need to be reviewed with the jury if these transactions are raised before the jury which is improper in a case that

3

involves charges about one singular real estate transaction. Kinman asserts that whether he was engaged in a criminal conspiracy or criminal acts on 5034 Sunset is not determined by transactions involving wholly different purchasers, properties, and lenders. Lastly, Kinman argues that the Government bringing in evidence of other transactions is akin to Kinman bringing in purchasers that would favorably testify about his efforts as their mortgage broker.

The Government responds that the loan applications Kinman submitted for these Zwego-sponsored loan applications follow the same pattern or modus operandi used by Kinman in the Barshaw loan application in this case. Government argues these uncharged transactions are similar to this case in that (1) the signatures of Cardarella and Shields, along with the signatures of the Barshaws, that appear on the October 19, 2006 real estate sales contract Kinman presented to Fieldstone Mortgage, are all forged signatures; (2) Kinman represented to Fieldstone Mortgage that the financial information for the Barshaws appears on the loan application was obtained by him during a face-to-face interview of the Barshaws, but no such face-to-face interview ever took place; (3) Kinman represented to Fieldstone Mortgage that the income information for the Barshaws that appears on the loan application was their true income, but he never obtained income information from them; and (4) Kinman's admission to FBI agents that he simply made up the income information he placed on the Barshaw loan application forms.

The Court finds that the circumstances surrounding this transaction are similar in both substance and also in time to the activities charged in the indictment. The Court also finds that the probative value of the evidence outweighs any unfair prejudice to the

defendant. Therefore, Kinman's motion to exclude these uncharged transactions is **DENIED**.

**B.     Defendant Peterson's Motion Response to Government's Intent to Offer Evidence of Related Conduct (Doc. No. 143)**

The Government seeks to admit the following six categories of related conduct (which includes various uncharged transactions in each category) pertaining to Kinman:

1.      Category 1: Evidence that a double set of HUD-1 closing statements were prepared, of which does not disclose payments to North Mission Investments

2.      Category 2: Evidence that the seller of one property complained about a forged sales contract, with a price in excess of $160,000 of the sales contract that he had not signed ("blown closing")

3.      Category 3: Evidence that Mr. Peterson was the title representative in four to five owner/occupied transactions completed within a 30 day period in which the buyer represented that he would own/occupy the property being financed. The Government seeks to also admit this evidence against Kinman.

4.      Category 4: Separate HUD-1 settlement statements which did not disclose a payment to North Mission Investments, even though payments had been approved and paid to North Mission Investments

5.      Category 5: One instance where Mr. Peterson received a seller side HUD-1 with a contract sales price of $250,000, where Peterson then prepared a buyers side HUD disclosing a contract sales price of $450,000, and a payment to North Mission Investments of $191,000.

6.      Category 6: At least four instances where Rick Peterson allegedly forged the signature of a seller on money orders used during a real estate closing

In response to the above-identified transactions, defendant Peterson sets forth the following arguments. As to Category 1, 4, and 5, Peterson asserts that none of these uncharged transactions are relevant because in those transactions the fee to North Mission Investments was not disclosed to the sellers and the lenders. Peterson distinguishes these uncharged transactions from the charged transaction by noting that the fee to North

5

Mission Investments was fully disclosed to the buyers, sellers, and the lenders in the 5034 Sunset Drive transaction. With regard to Category 3, Peterson argues these are irrelevant and should be excluded under Rule 403 because they are misleading and confusing to the jury. Additionally, Peterson argues that the transactions involved in Category 6 should be excluded as irrelevant because (1) there is no allegation that Peterson forged documents in the current case, (2) the transactions are too distant in time to the acts alleged in the indictment, (3) the evidence is confusing to the jury, and (4) the evidence is incredibly prejudicial.

With regards to the transactions (Categories 1, 4, and 5) in which Peterson prepared multiple sets of closing documents, the Government asserts Peterson's role was to act as a fiduciary of the lender, and his repeated breach of that fiduciary duty is relevant to establish fraudulent intent in the charged transaction. The Government responds that with respect to the uncharged transactions in Category 3 where defendants Kinman and Peterson falsely represented that the buyer intended to be an owner/occupier, defendants Kinman and Peterson made the same false representations about the Barshaws being the owner/occupier. For example, the Government stated that at three separate closings which took place between March 24, 2005, and March 31, 2005, defendant Peterson was the closing agent for the sale of three separate properties being purchased by Zwego straw buyer Eldon Painter. The Government asserts that each of the three sales involved a different lender. At each closing, the Government states that Peterson prepared closing documents falsely representing that Painter was purchasing each property as his primary residence. In regards to the uncharged transactions involving forged signatures on money orders (Category 6), the Government argues that "[g]iven the forged documents associated

6

with the charged Barshaw transaction," the forged money orders are relevant to establish: (1) fraudulent intent, (2) lack of accident or mistake, (3) modus operandi, and (4) planning and preparation.

The Court finds that the uncharged transactions contained within Categories 1,4,5 and 6 are excluded. The Court agrees with Peterson that the transactions in Categories 1, 4, and 5 are dissimilar to the transaction in this case because the North Mission Investment fee was not disclosed to the sellers, buyers, and lenders in the uncharged transactions. However, the North Mission Investment fee was fully disclosed to the buyers, lender, and the sellers in the 5034 Sunset transaction. Thus, these uncharged transactions are also irrelevant. The Court also concludes that allegations in the indictment do not assert allegations of forgery against Peterson, thus the uncharged transactions in Category 6 are also dissimilar and irrelevant. However, the Court will allow the uncharged transactions detailed in Category 3 against Kinman and Peterson because the circumstances of those transactions are similar to this transaction. For example, in the transactions detailed in Category 3 and the 5034 Sunset transaction, it was falsely stated that the straw buyers would occupy the property as their primary residence. Thus, the Court hereby excludes uncharged transactions in Categories 1,4,5, and 6, but admits the uncharged transactions in Category 3. The Court will address the uncharged transactions in Category 2 below. Therefore, the Court **GRANTS in Part**, and **DENIES in part** Peterson's motion to exclude.

7

**C.  Defendants Cardarella and Shields' Motion in Limine to Exclude Evidence of "Blown" Closing on 4917 State Line Road (Doc. No. 147)**

The Government seeks to admit the transaction involving the "blown" closing at 4917 State Line Road in May 2006 against Peterson and defendants Cardarella and Shields. According to the Government, the details of this particular closing are as follows:

> The seller, Dustin Laun, signed a written sales contract to sell the property for the price of $220,000.00. When Peterson presented Laun with documents to sign at closing, there was a one-page assignment of proceeds giving North Mission Investments, Zwego's company, $153,000.00 of the proceeds owed to Laun and there was also a HUD-1 settlement statement that listed the contract sales price as $380,000.00. Laun then told Peterson that he had not agreed to give $153,000.00 of Laun's sale proceeds to North Mission Investments and that the contract sales price was not $380,000.00. Laun subsequently demanded to view a copy of the written sales contract. Peterson provided Laun with a written sales contract that listed the sales price as $380,000.00 but the contract contained a forged signature of Laun's name. Laun told Peterson that his signature had been forged on the $380,000.00 sales contract and that Laun had not signed it. Laun asked Peterson whether he had any prior dealings with North Mission Investments and whether this had happened before Peterson's dealings with North Mission Investments. Peterson responded that this was the second or third time he had been made aware that a sales contract involving North Mission had contained a forged signature and that he had previously closed a lot of deals for Zwego and North Mission Investments. Laun refused to complete closing and Peterson then left.

Additionally, it should be noted that the Government's relevant conduct chart indicates that the Barshaws were the straw buyers on this deal.

First, Peterson (1) denies the accuracy of the seller's statement regarding what Peterson told him; and (2) states the evidence adds little probative value but risks misleading the jury through allegations of forgery as to Peterson that are irrelevant. Peterson also notes that the details of this transaction are unclear, such as where the fee to North Mission Investments was disclosed in the closing documents.

Second, defendants Shields and Cardarella argue that the evidence of another seller backing out of a proposed sale upon learning that a management fee would be paid to North Mission Investments is not relevant to the state of mind, intent, or knowledge of any fraudulent scheme of either Shields or Cardarella. They also indicate that the evidence of the other seller backing out must be excluded under Rule 403 as its "marginal" probative value is greatly outweighed by the danger of unfair prejudice, and its admission would confuse the jury. Further, they assert that the other seller's state of mind is not relevant to the issue in this case–namely the defendants' Cardarella and Shields' state of mind towards the alleged fraud.

With regard to defendant Peterson, the Government responds that the "blown" closing is highly relevant to establish: (1) that the October and November 2006 fraudulent acts charged against Peterson in the pending indictment were not the result of accident or mistake and (2) that Peterson's intent in the charged transaction was to engage in fraudulent conduct. The Governments further argues that this closing is relevant as to defendants Cardarella and Shields because "[t[he reaction of Dustin Laun is what a jury would expect from someone who was not a party to the fraud. The reaction of Cardarella and Shields is what a jury would expect from someone who is willing to go along with fraud."

The Court agrees with defendants Peterson, Cardarella, and Shields that the "blown" closing on 4917 State Line should be excluded. The Court concludes that this transaction is dissimilar because the seller, Laun, did not know about the fee being paid to North Mission Investments until the final moment at closing and it is also unclear if the fee was disclosed to the lender and the buyer. In addition, the Court agrees with defendants

Cardarella and Shields that admitting evidence simply to show that another seller noticed the "red flags" in the transaction and subsequently walked out of the closing is highly prejudicial against defendants. Thus, the prejudice outweighs the probative value. Therefore, defendants Cardarella and Shields' motion in limine to exclude evidence of the "blown" closing on 4917 State Line Road is **GRANTED** and this evidence is excluded as to all defendants.

**D.     Defendant Zwego's opposition to Government's 404(b) notice (Doc. No. 254)**

In its notice, the Government stated all previous notices of the Government's intent to offer evidence of schemes to defraud lenders are also applicable to Zwego. In addition, the Government seeks to offer Jennifer Meeks, Zwego's sister, to demonstrate another scheme to defraud a lender in which defendant Zwego used his sister as a straw buyer. The Government did not list the details of this scheme, but stated that the details were disclosed to counsel.

Defendant Zwego joins in the opposition filed by the other defendants. Zwego argues that in the Government's list of proposed exhibits, they have identified 22 other transactions that it intends to offer. Zwego asserts that if the Court allows such evidence, the jury would now have to sift through at least 23 transactions rather than the single transaction charged in the Indictment. Zwego argues these other transactions will confuse the jury. Further, Zwego notes that these separate 22 transactions are repetitive and the evidence is cumulative. Zwego believes that each transaction will in essence require a mini-trial and prolong what is already a lengthy trial. Pursuant to Rule 403, Zwego argues these 22 transactions should be excluded as cumulative and confusing evidence.

Where the Court has excluded evidence as against defendants Kinman, Peterson, Shields, and Cardarella, those rulings are also applicable to Zwego. With regard to Zwego's sister, Jennifer Meeks, testifying that information submitted to the lenders was false, the Court agrees that such evidence is relevant and similar to the transaction involved in this case. Thus, the probative value outweighs any prejudice. Therefore, defendant Zwego's request to exclude evidence of the 22 uncharged transactions is **GRANTED in part, DENIED in part**.

### III. CONCLUSION

For the foregoing reasons, defendant Kinman's notice of opposition to the Government's relevant conduct notice (Doc. No. 138) is **DENIED**; defendant Peterson's motion response to Government's intent to offer evidence of related conduct (Doc. No. 143) is **GRANTED in part, DENIED in part**; defendants Cardarella and Shields' motion in limine to exclude evidence of "blown" closing on 4917 State Line Road (Doc. No. 147) is **GRANTED**; and defendant Zwego's request to exclude all relevant conduct in Government's 404(b) notice (Doc. No. 254) is **GRANTED in part, DENIED in part**.

**IT IS SO ORDERED.**

Date: 10/19/07  
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**  
Fernando J. Gaitan, Jr.  
Chief United States District Judge

11